IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *f/u/b/o Aarow Electrical Solutions, LLC*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-01236 (AJT/IDD) |
| | ) | |
| LIBERTY MUTUAL INSURANCE CO. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this Miller Act case to recover unpaid subcontractor fees on a federally-funded construction project in Virginia, Defendant Liberty Mutual Insurance Company ("Liberty" or "Defendant") has filed a motion to transfer this action to the District of Maryland pursuant to 28 U.S.C. 1404(a) on the grounds that a forum selection clause in the governing subcontract (the "FSC") requires transfer and that transfer is otherwise appropriate under Section 1404(a). *See* [Doc. No. 17] (Motion to Change Venue) ("the Motion"). Plaintiff Aarow Electrical Solutions, LLC ("Aarow" or "Plaintiff") opposes transfer on the grounds that the Miller Act designates this District as the proper venue, that the FSC is otherwise inapplicable since it expressly defers to "controlling law" and by its language, which has been construed by the Fourth Circuit in other cases, authorizes transfer only to Maryland state courts, which has no jurisdiction as Congress has assigned Miller Act jurisdiction exclusively to federal courts; and that transfer under Section 1404(a) is otherwise not warranted. [Doc. No. 23] ("Opp."). This Court held a hearing on the Motion on October 17, 2025, following which it took the Motion under advisement. By Order dated November 3, 2025 [Doc. No. 26], the Court denied the Motion and in further support of that Order issues the following Memorandum Opinion.

1

I. Factual and Procedural Background.

In this action, the Plaintiff brings a single claim under the Miller Act, which grants a private right of action to suppliers of labor and materials on federally-funded construction projects against defendants who are in default on payments for their labor and materials. 40 U.S.C. § 3133 (b)(1). More generally, the Miller Act provides various protections for anyone who works on or provides material for a federally-funded construction project. 40 U.S.C. §§ 3131- 3133. Its specific provisions require prime contractors to post payment bonds, require the Federal Acquisition Regulation to provide alternative protections to suppliers, and authorize subcontractors to recover against the prime for any costs unpaid for 90 days or more. *Id*.

The parties' dispute involves a federal construction project known as the P021 Middle School/High School Replacement Project located on the Marine Corps Base in Quantico, Virginia (the "Project"). Complaint ¶ 6. The prime contractor on that project, John C. Grimberg Co., Inc. ("Grimberg"), which is not a party to this litigation, subcontracted with Aarow for electrical work on the Project ("the Subcontract").[1] [Compl.] ¶ 9. Both Aarow and Grimberg are formed under Maryland law and maintain their principal place of business in Maryland. [Compl.] ¶ 9. Liberty is being sued in its capacity as surety for the payment bond posted by Grimberg pursuant to the Miller Act. [Compl.] ¶ 8. Liberty is formed under the laws of Massachusetts and maintains its principal place of business there. [Compl.] ¶ 10.

Beginning sometime around September 2021, soil issues, followed by a government ordered work suspension, delayed various aspects of work on the project, including Arrow's.

---

[1] In accordance with the procedure adopted for Miller Act claims, the Plaintiff is officially styled as "the United States for the use and benefit of Aarow Electrical Solutions, LLC." Despite this formality, Aarow is the sole active Plaintiff in this matter.

[Compl.] ¶¶ 16-21. A series of modifications to the prime contract and the Subcontract were made, including a September 2021 extension and settlement between Grimberg and the government (the "Fresh Start Agreement"), as well as several "restart proposals" submitted by Aarow to Grimberg between August 2022 and December 2024. [Compl.] ¶¶ 23-31. Aarow claims that as a result of these various delays and modifications, it has incurred various costs on the Project, which Grimberg has not paid. [Compl.] ¶ 32.[2]

## II. Legal Standard

The federal transfer statute, 28 U.S.C. 1404 (a), provides that "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This statute "is intended to place discretion in the district court to adjudicate motions for transfer of venue according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964)). The dispositive considerations under Section 1404(a) are (1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and the convenience of parties and witnesses justify transfer to that forum." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Within the Fourth Circuit, the second inquiry is comprised of four factors: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436 (4th Cir. 2015). The party moving for a transfer of venue

---

[2] Aarow filed its complaint on July 24, 2025. Liberty filed an answer on September 5, 2025. Liberty then filed the Motion to Transfer Venue on September 12, 2025, which was fully briefed as of October 1, 2025.

bears the burden of showing that the transfer is warranted. *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002).

### III. Discussion

#### A. Whether the FSC is enforceable and authorizes transfer to the District of Maryland.

The Miller Act provides that cases pursuant to the Act be brought "in the United States District Court for any district in which the contract was to be performed and executed…" 40 U.S.C. § 3133(b)(3)(B). Here, the FSC between Arrow and Liberty's insured, Arrow's prime contractor Grimberg, states that "[e]xcept as may be required to the contrary under controlling law … dispute[s] shall be submitted to the exclusive jurisdiction of the Courts of Maryland." [Doc. No. 23-1] at p. 6, ¶ 33.

The FSC raises two issues as to its enforceability in this action: (1) whether its explicit reference to "controlling law" precludes its enforceability in light of the Miller Act's venue provision; and (2) whether, by its terms, it authorizes transfer only to Maryland state courts, which have no jurisdiction to hear Miller Act case, and not, as Liberty requests, to the United States District Court for the District of Maryland.

As a general proposition, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Also settled is that a venue provision is "merely a venue requirement" and not a jurisdictional bar, *F.D. Rich Co.*, 417 U.S. 116, 125 (1974); and that statutory venue provisions generally are subject to a contractual waiver. *See, e.g., National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Applying those holdings, courts interpreting the Miller Act's venue provision have concluded that it can be contractually waived. *See, e.g. In*

4

*re Fireman's Fund Ins. Cos., Inc.*, 588 F.2d 93, 94 (5th Cir. 1979) ("The Miller Act venue provision exists for the convenience of the parties [and] is subject to variation by their agreement");[3] *see also United States ex rel. Pittsburgh Tank & Tower, Inc. v. G & C Enters., Inc.*, 62 F.3d 35, 36 (1st Cir. 1995). Enforcement of the FSC according to its terms would therefore not be "contrary under controlling law;" and the issue therefore reduces to whether the transfer of this action to the District of Maryland, as Liberty requests, is within the scope of the FSC.

B. Whether the FSC authorizes transfer to the District of Maryland.

The FSC states that "…dispute[s] shall be submitted to the exclusive jurisdiction of the Courts of Maryland." ([Doc. No. 23-1] at p. 6, ¶ 33). Jurisdiction over Miller Act actions is exclusively federal. *United States for Use of Owens–Corning Fiberglass Corp. v. Brandt Constr. Co.,* 826 F.2d 643, 645 (7th Cir.1987), *cert. denied,* 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988). Maryland state courts therefore have no jurisdiction to hear this case; and transfer to such a jurisdictionless court would be improper. Accordingly, the requested transfer based on the FSC would be appropriate only if its scope authorizes transfer to the District of Maryland.

In *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752 (4th Cir. 2010), the Fourth Circuit effectively held that reference in a forum selection clause to the courts "of a state" refers exclusively to that state's state courts, not federal courts that are located within that state:

---

[3] Courts have also recognized that the Miller Act venue provision was intended to benefit Miller Act defendants (here, effectively Grimberg), and thus can effectively be waived by defendants. *See U. S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc.*, 364 F.2d 705, 707 (2d Cir. 1966) (collecting cases); *See also Elec. & Missile Facilities, Inc. v. U. S. for Use of Moseley*, 306 F.2d 554, 556 (5th Cir. 1962) ("[h]ad Congress meant to make things easy for such plaintiffs, it would have provided them with a choice of forums in which to bring suit."), rev'd sub nom. *Moseley v. Elec. & Missile Facilities, Inc*., 374 U.S. 167, 83 S. Ct. 1815, 10 L. Ed. 2d 818 (1963) *; see also J. W. Bateson Co. v. U.S. ex rel. Bd. of Trs. of Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 589 (1978) ("[T]he Miller Act was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction projects.")

> [F]orum selection clauses that use the term 'in [a state]' express
> the parties' intent as a matter of geography, permitting jurisdiction
> in both the state and federal courts of the named state, whereas
> forum selection clauses that use the term, 'of [a state]' connote
> sovereignty, limiting jurisdiction over the parties' dispute to the
> state courts of the named state. . . We think the rule is
> sound and join our sister circuits in adopting it here.

*Id*. at 755 (citations omitted). Here, the FSC authorizes transfer to the "the exclusive jurisdiction of the Courts of Maryland," not the courts "in Maryland" and therefore under *FindWhere* authorizes transfer only to Maryland state courts, which have no Miller Act jurisdiction, not to a Maryland federal court which is the only court in Maryland with Miller Act jurisdiction.

Liberty attempts to avoid this dispositive holding in *FindWhere* by arguing (1) that unlike the forum selection clause in *FindWhere*, the FSC contains the phrase "the courts <u>of Maryland</u>" and not 'the courts of the state of Mayland; (2) the FSC is based on its surety Grimberg's standard contract language in use since the 1990's and thus precedes the holding in *FindWhere*; and (3) since much of Grimberg's work involves the federal government subject to the Miller Act, the parties to the FSC are unlikely to have intended an exclusively state venue designation. [Doc. No. 18]. None of these contentions have any merit given the clear and explicit holding and discussion in *FindWhere.* The *FindWhere* court's construction of the language in the forum selection clause at issue in that case did not depend on the presence or absence of the word "state," but rather on whether the word "of" or "in" was used in reference to a state, as in the phrase "courts *in* Virginia" versus the "courts *of* Virginia." *FindWhere*, 626 F.3d at 755. Nor does its construction of the forum selection clause somehow have less force with respect to when the clause was written, since it construed the parties' intent as a matter of law based on the objective meaning of the words used.[4] Other courts have rejected similar arguments*; see, e.g.,*

---

[4] Even were the date on which the FSC was first written have some relevance, which it does not, the FSC in this case appears in a contract entered into between Arrow and Liberty's surety over a decade after *FindWhere* was decided.

*U.S. for Use of B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d 1115, 1116 (10th Cir. 1995).

### C. Whether Transfer is otherwise Justified under Section 1404(a)

Here, this action could have been brought in the District of Maryland, and the merits of Defendant's motion depend on whether transfer is warranted based on the "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. 1404(a). In making that determination, the Court must consider (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Plumbing Servs.*, 791 F.3d at 444.

### i. The Weight Accorded to Plaintiff's Choice of Venue

As a general rule, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Plumbing Servs., Inc.*, 791 F.3d at 444 (*quoting Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F.Supp.2d 473, 477 (E.D.Va. 2007)). However, it is accorded less weight when a plaintiff has filed in a forum other than its home forum and transfer is sought to a Plaintiff's home forum (*U.S.A. ex rel. Advance Concrete, LLC v. T.H.R. Enters., Inc.*, No. 2:15CV477, 2016 WL 3002408, at *3 (E.D. Va. May 19, 2016) (quoting *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007))); or when Plaintiff contracts to another forum through a forum selection clause. *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). Here, Arrow has selected a forum other than its own home forum and transfer is requested to the state that is its home state; and regardless of the FSC's enforceability, Arrow did agree to a have a "dispute" resolved in its home state of Maryland,

---

Nor do standard contract construction principles support Liberty's position, given Grimberg's status as the drafter of the FSC. *See* Restatement (Second) of Contracts § 206 (Am. Law Inst. 1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.")

implicitly recognizing that litigation in Maryland would not be unreasonable. On the other hand, Arrow's choice of forum is endorsed by the Miller Act's venue provision and Arrow's agreement to have the case litigated in Maryland extended, in effect, to only claims that could be resolved in Maryland state courts.  Aarow's choice is therefore entitled to some consideration, particularly given the non-enforceability of the FSC. On balance, this factor weighs (however slightly) in favor of Plaintiff.

<u>ii. Witness Convenience and Access</u>

In support of its transfer request based on this consideration, Liberty points only to the likely need for Grimberg, as a Maryland corporation centrally involved in the dispute, to produce documents and produce witnesses. [Doc. No. 18] at 8. But this District Court and the District Court within the District of Maryland to which the case would be transferred are only approximately 20 miles apart, and courts have discounted the propriety of transfer based on distances between transferor and proposed transferee courts substantially greater than those involved here. *See, e.g., Leesona Corp. v. Duplan Corp.*, D.C.R.I.1970, 317 F. Supp. 290 (a 200-mile distance did not support argument that parties would be inconvenienced). This consideration does not weigh significantly in favor of either party.

<u>iii. Convenience of the Parties</u>

Conceding that it "will face no greater inconvenience litigating in Maryland than Virginia," ([Doc. No. 18] at 8),  Liberty argues that transfer is nevertheless merited because both Aarow and Grimberg (a potential intervenor) are based in Maryland and "Aarow has also previously filed, as required under the FSC, litigation against Grimberg in a Maryland state court arising out of the same Project at issue here (which Liberty characterizes as "invoking" the FSC). *Id*.

Liberty has failed to demonstrate that this third factor weighs in favor of transfer. *See Russell v. Wright*, 2012 WL 868773, *8 (W.D. Va. 2012) ("A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer"). In that regard, Liberty does not explain why Aarow's decision to sue in Maryland courts was "invoking" the FSC rather than merely acting in a way consistent with it with respect to claims that were within the jurisdiction of the Maryland state courts; and Liberty's claims that Grimberg would be inconvenienced litigating in this district is challenged, as Arrow observes,  by Grimberg's decision not to seek transfer of several previous Miller Act cases filed in the Eastern District of Virginia under subcontracts with an identical forum selection clause, *See U.S. ex rel. Mid Atlantic Fire Protection, Inc. v. Liberty Mutual Ins. Co., et. al.*, Case No.: 1:21-cv-00714-TSE-IDD (E.D. Va.); *U.S. ex rel. Kitchens to Go, LLC v. John C. Grimberg Co., Inc., et al.*, Case No.: 1:16-cv-00991-TSE-IDD (E.D. Va.); *U.S. ex rel. Finley Asphalt & Sealing, Inc. v. John C. Grimberg Co., Inc.*, Case No.: 1:10-cv-00662-AJT-JFA (E.D. Va.).

### iv. The Interests of Justice

Nor do considerations related to the "interests of justice," chiefly judicial economy and the avoidance of inconsistent judgments, favor transfer. *Byerson v. Equifax Info. Servs., LLC*, 467 F.Supp.2d 627, 635 (E.D.Va.2006). The Court has rejected *infra*. Liberty's contention that this factor supports transfer because it would "ensur[e] that Aarow's claims are adjudicated in the jurisdiction specifically identified in the Forum Selection Clause and agreed upon by Aarow and Grimberg…" [Doc. No. 18] at 9. And the prospects for an inconsistent judgment are too speculative to be given any significant weight.

9

Nor does judicial economy weigh in favor of transfer, particularly given the current litigation schedule in place and the Court's previous involvement in two other lawsuits related to the P021 Middle School/High School Replacement Project. *See Terry v. Walker*, 369 F. Supp. 2d 818, 823 (W.D. Va. 2005); s*ee also Innovative Communications Technologies, Inc. v. Vivox, Inc.*, 2012 WL 4738979, *6 (E.D. Va. 2012) ("in most cases, the litigation of related claims in the same tribunal facilitates efficient, economical, and expeditious pre-trial proceedings and discovery, and prevents duplicative litigation and inconsistent results").

In sum, Liberty has failed to establish that the relevant considerations under Section 1404(a) warrant the requested transfer to the District of Maryland.

<u>IV. Conclusion</u>

For the reasons stated above, the Motion to Change Venue [Doc. No. 17] be, and the same hereby is, DENIED.

The Clerk is directed to forward a copy of this Order to all counsel of record.

Anthony J. Trenga
Senior U.S. District Judge

November 14, 2025
Alexandria, VA

10